(No. 7272.   November 27, 1945.).

ROSE L. McLEOD, as Executrix of L. A. Porter, Deceased, Plaintiff-Appellant, v. LEWIS-CLARK HOTEL COMPANY, a corporation, and ALBERT C. NELSON and GEORGE L. NELSON, Defendants-Respondents.

[164 P. (2d) 195.]

J. H. Felton, and Hamblen, Gilbert & Brooke for appellant.

Thomas A. Madden for respondent Lewis-Clark Hotel Company, and Cox, Ware & Stellmon for respondents Albert C. Nelson and George L. Nelson.

HOLDEN, J.—The Lewis-Clark Hotel Company, an Idaho corporation, was the owner of what is called the Lewis-Clark Hotel, located at Lewiston, Idaho. The hotel was operated by Albert C. Nelson and George L. Nelson, under lease from the hotel company. The total par value of all outstanding stock was $236,000.00, divided into 2360 shares of the par value of $100.00 per share. The estate of L. A. Porter, deceased, owned ten shares of the capital stock. On the 5th day of February, 1945, the hotel company gave notice of a special meeting of the shareholders of the company on the 26th day of February, 1945, for the purpose of considering the matter of the sale of the hotel and of fixing a minimum sale price therefor, and for the purpose of authorizing and directing the execution and delivery of a deed of the corporation to any person or persons willing to purchase the property at any price equal to or greater than the minimum sale price fixed by the shareholders. The notice was accompanied by a letter of the president of the hotel company, advising it had received an offer of $236,000.00 for the hotel and that, in the opinion

of the president, it was to the best interests of the company and the shareholders to accept the offer. February 26, 1945, a special meeting of the shareholders was held in the hotel, at which a resolution was adopted empowering and directing the board of directors to sell and convey the property "to any person or persons willing to purchase said property at any price equal to or greater than the sum of $236,000.00, which said sum is hereby fixed as a minimum sale price to be accepted by said corporation for said above described property." On the day of the special meeting of the stockholders, February 26, 1945, N. H. McLeod made a written offer to purchase the property and pay therefor the sum of $245,000.00, $20,000.00 upon the execution of a contract and the balance upon the delivery of a good and sufficient warranty deed, accompanying the offer with a cashier's check (not endorsed) for the sum of $20,000.00, issued by the Idaho First National Bank, Lewiston branch, and payable to McLeod. McLeod's offer to purchase the hotel, together with the cashier's check, were placed in the hands of the president just before the special meeting; the president did not inform the stockholders of the receipt of the offer—why he did not the record does not disclose. Sometime between February 26, 1945, the date of said special meeting of the stockholders, and March 7, 1945, Albert C. and George L. Nelson raised their bid to $246,000.00. On the day last mentioned the board of directors of the hotel company held a meeting to consider and act upon the sale of the hotel property, at which meeting the board accepted the said bid and thereupon entered into a contract for the sale of the hotel property to respondents Nelson. This suit was brought to set aside the contract of sale.

Following the filing of the original complaint, the executrix, by leave of the court, filed an amended complaint. The amended complaint alleged, in substance: that Rose L. McLeod was the executrix of the last will and testament of L. A. Porter, deceased; that the estate was the owner of ten share of the capital stock of respondent Lewis-Clark Hotel Company; that the Lewis-Clark Hotel Company was a corporation organized and existing under the laws of the State of Idaho; that the principal place of business of the hotel company was located at Lewiston, Nez Perce County, Idaho; that the hotel company is solvent; that the executrix brings this suit in behalf of herself as executrix of the

estate of L. A. Porter, deceased, and in behalf of all other stockholders of the hotel company similarly situated and who would benefit by the suit; that the hotel company was the owner of the hotel building located on certain blocks in Lewiston; that sometime prior to the sale of the hotel the president of the hotel company entered into informal negotiations with respondents Albert C. Nelson and George L. Nelson looking to a sale of the property to them; that in the course of the negotiations respondents Nelson from time to time increased the price they were willing to pay for the hotel from an initial figure of around $175,000.00 to the sum of $236,000.00; that the board of directors of the hotel company then called a special meeting of the shareholders to authorize a sale of the property; that accompanying such notice was a printed letter to the shareholders over the name of the president, a copy of which was attached to the amended complaint; that during said negotiations respondents Nelson were the owners of ninety-four shares of the capital stock of the hotel company and for sometime prior to February 26, 1945, had been leasing and were leasing and operating the hotel; that as such shareholders, respondents Nelson were familiar with the value of the hotel and its earning power and took an active part in the proceedings of the hotel company and were familiar with its plans and activities; that pursuant to the said notice a shareholders' meeting was convened in the hotel February 26, 1945; that at said meeting one N. H. McLeod submitted in writing an offer to purchase the hotel at a price of $245,000.00, $9,000.00 higher than the bid theretofore submitted by respondents Nelson; that said McLeod accompanied said bid with a cashier's check for $20,000.00, as evidence of good faith, attaching to the amended complaint a copy of such check; that the bid, together with the cashier's check were placed in the hands of the president of the hotel company prior to the special meeting of the shareholders; that the president failed to disclose the same to the shareholders; that the shareholders proceeded by a vote of more than two-thirds of all outstanding stock to adopt a resolution authorizing a sale of the hotel for $236,000.00 or such greater price as might be obtained therefore, attaching a copy of the resolution to the amended complaint; that on or about March 7, 1945, the board of directors of the hotel company held a meeting to consider and act upon the sale of the hotel; that the executrix was

informed and believed and therefore alleged the fact to be that some officer or member of the board of directors, prior to the meeting of the board, disclosed to respondents Nelson the amount of the bid submitted by McLeod; that in any event, respondents secretly raised their bid for the property to $246,000.00; that the board secretly and without advising McLeod or the shareholders of the hotel company of the McLeod bid, proceeded to accept the bid of respondents Nelson and thereupon entered into a contract in writing to sell the hotel to respondents Nelson for $246,000.00; that said hotel property is worth substantially more than $246,-000.00; that nevertheless the board of directors proceeded secretly and out of favoritism to respondents Nelson to conclude a sale of the property to them; that respondents Nelson knew and understood it was the plan and purpose of the officers and directors of the hotel company to make a sale of the property to them without making any attempt to interest others in the purchase of the same, and without making any attempt to offer the same openly to the highest bidder, and without giving the said N. H. McLeod an opportunity to bid further for said property and without giving any other persons an opportunity to bid for said property; that if the pretended sale of the property to respondents Nelson is set aside and said hotel property is again offered for sale at open and competitive bidding

"a substantial increase in price therefor can be obtained, which increased price will result in a substantially larger distribution to the shareholders and be for their benefit. In this behalf plaintiff (appellant) alleges that said N. H. McLeod has offered in writing in such event to bid not less than $247,000.00, for said property, and that as evidence of good faith, if the court sets aside the present sale of said hotel property to the defendants (respondents) Nelson and if the court orders a further sale to be held openly and at auction, he (McLeod) will submit a bid for $247,000.00 and as evidence of good faith will deposit in the registry of the Clerk of this court a certified check for $20,000.00 guaranteeing the performance of said bid;" "that she has been required to employ attorneys and to incur expenses to institute and prosecute this action, and is entitled to be reimbursed by the hotel company for the expenses so incurred by her, and that plaintiff's (appellant's) attorneys are entitled to an allowance of reason-

able compensation for their services to said hotel company rendered in this action."

Separate demurrers were interposed by respondents Lewis-Clark Hotel Company and Albert C. Nelson and George L. Nelson, the ground of such demurrers being that the amended complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrers and thereafter entered judgment of dismissal. The appeal to this court is from that judgment.

Appellant assigns two alleged errors. That, (a) the trial court erred in sustaining the demurrers of the respondents and, (b) that it erred in entering judgment dismissing the suit. She says, "These assignments raise but a single question and can be discussed together. The fundamental inquiry in this case is whether or not under the Idaho statute the directors of the defendant (respondent) Lewis-Clark Hotel Company met their duty as fiduciaries and discharged the same with good faith."

Sections 29-141 and 29-144, I.C.A., provide:

(Sec. 29-141.) "Relation of directors and officers to corporation.—Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

(Sec. 29-144.) "Voluntary transfer of corporate assets. —1. A voluntary sale, lease or exchange of all the assets of a corporation may be authorized by it upon such terms and conditions as it deems expedient, * * *

"2. * * *

"3 * * *"

Appellant's position is stated thus:

"The statute (referring to Section 29-141, above quoted) is plainly worded, follows the general rule, and is grounded on the proposition that directors of a corporation are fiduciaries, and as such must exercise good faith. Furthermore, that in the discharge of their duties they must use that diligence, care and skill which ordinarily prudent men

would exercise under similar circumstances in like positions."

■ Unquestionably, in the matter of the sale of the hotel, the officers and directors of respondent Lewis-Clark Hotel Company stood in a fiduciary relation to the stockholders, and unquestionably the officers and directors were required, under the statute (Sec. 29-141, supra), to "discharge the duties of their respective positions in good faith, and with that diligence, care and skill, which ordinarily prudent men would exercise under similar circumstances in like positions." Hence, the decisive question is: Did the officers and directors of the corporation "discharge the duties of their respective positions in good faith, and with that diligence, care and skill, which ordinarily prudent men would exercise under similar circumstances and in like positions"? If so, the judgment appealed from must be affirmed. If not, it must be reversed.

■ Appellant alleges if the hotel is again offered for sale "a substantial increase in price therefor can be obtained," and then alleges that "in this behalf" (referring to the allegation the hotel could be sold for a substantial increase in price), that one N. H. McLeod, not a party to this suit, would bid $247,000.00 for the property, which, of course, in no way binds him. Hence, he could and might, decline to make that or any bid. It is noteworthy appellant (in view of the fact she is represented by very able counsel) does not allege either what the hotel was reasonably worth, or that it was reasonably worth some amount "substantially", or considerably, more than what it sold for, or that the sum of $246,000.00 (the amount it did sell for) was not a fair price, or that the price was inadequate, or that McLeod was financially able to pay $247,000.00 for the property. But assuming McLeod had made a binding bid of $247,000.00 for the property, or had authorized appellant to speak for him, there would be a difference of only $1,000.00 between the amount the property sold for and what appellant says McLeod "would" bid, a somewhat infinitesmal difference, taking into consideration the price the hotel sold for.

It was held by the Court of Chancery of Delaware in *Allaun v. Consolidated Oil Co.* (also involving a sale of all the assets of a corporation), 147 A. 257, 261:

"It is not every disparity (in the case at bar it is not shown there is any disparity) between price and value that will be allowed to upset a proposed sale. The disparity must be sufficiently great to indicate that it arises not so much from an honest mistake in judgment concerning the value of the assets, as from either *improper motives* underlying the judgment of those in whom the right to judge is vested or a *reckless indifference* to or *deliberate disregard* of the interests of the whole body of stockholders including of course the minority. * * * (Citing cases.) The judgment of the directors in fixing the terms and conditions of the sale is entitled to the presumption in its favor that it was exercised honestly and in good faith." (Emphasis added.)

In *Allied Chemical & Dye Corporation v. Steel & Tube Co.* (Court of Chancery of Deleware), 122 A. 142, 146, the Chancellor said:

"even if it should be that my own view should be that the price named is not full or adequate, yet the discrepancy between what I should conceive to be the fair one and the price named in the contract *would have to be so great* as to lead me to think that it is to be attributed not to a difference of opinion upon a highly debatable question, but rather to *bad faith,* before I would feel justified in continuing the injunction." (Emphasis added.)

In *Dyar v. Stewart* (C.C.A., 5th Circuit), 123 F. (2d) 278, 280, it was held:

"* mere inadequacy of price (not shown in the case at bar) is not sufficient to create a presumption of fraud. To authorize the court to set aside a conveyance on the ground of inadequacy of price, the inadequacy must be *'so glaring and gross as at once to shock the understanding and conscience of an honest and just man.'* " (Emphasis added.)

In *Eyre v. Potter*, 14 L. ed. 592, 600, the Supreme Court of the United States held:

"Again, it is ruled, that inadequacy of consideration (even where that is made to appear) is not of itself a distinct principle of equity. The common law knows no such principle. * * * Common sense knows no such principle. The value of a thing is what it will produce, and it admits

of no precise standard. One man, in the disposal of his property may sell it for less than another would. If courts of equity were to unravel all these transactions, they would throw everything into confusion, and set afloat the contracts of mankind. Such a consequence would of itself be sufficient to show the injustice and impracticability of adopting the doctrine, that mere inadequacy of consideration should form a distinct ground for relief."

Furthermore, appellant, as hereinbefore pointed out, failed to allege the reasonable value of the hotel. Without such an allegation this court cannot determine whether there actually is a disparity between the price the hotel sold for and its reasonable value, or that there is such a disparity between that price and its reasonable value as to indicate the directors acted from either improper motives or with reckless indifference or deliberate disregard of the interests of the whole body of stockholders. And, further we cannot say the hotel was not sold for what it was reasonably worth, based upon an allegation as vague and uncertain as appellant's that someone, not a party to the suit, or in any way bound by appellant's allegation, "would", if the property was again offered for sale, bid $1,000.00 more, less than one-half of one per cent of the price the directors obtained for the hotel. It follows from what has been said the judgment must be affirmed, and it is so ordered, with costs to respondents.

Budge, Givens, Miller, JJ., and Morgan, D.J., concur.